**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ECHOE CAMACHO, on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>PENFED CREDIT UNION.<br><br>　　　　　　Defendant. | Civil Action No. _____<br><br><br>**<u>JURY TRIAL DEMAND</u>** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Echoe Camacho, on behalf of herself and all persons similarly situated brings this class action complaint against PenFed Credit Union ("PCU" or "Credit Union"), and alleges the following:

### <u>INTRODUCTION</u>

1.　　When consumers open a checking account with their credit union, they have to enter into a standard contract written by the credit union and its lawyers. All the credit union has to do is honor the contract it wrote and comply with the terms it dictated.

2.　　PCU promises its customers that if their account balance drops too low to cover a particular item such as a check, debit, or electronic bill payment, PCU will charge the customer a single $30 insufficient funds fee ("NSF Fee") per item. But as Ms. Camacho and consumers all over the country have discovered, PCU doesn't abide by this promise. Instead, PCU routinely charges its customers multiple NSF Fees for the same item, driving their account balances deeper into negative territory.

1

3.     PCU's customers have been injured by the Credit Union's improper practices to the tune of millions of dollars bilked from their accounts in violation PCU's clear contractual commitments.

4.     Ms. Camacho, on behalf of herself and two Classes of similarly situated consumers, seeks to end PCU's abusive and predatory practices and force it to refund all of these improper charges. She asserts claims for breach of contract; breach of the covenant of good faith and fair dealing; violation of state consumer protection law; and/or unjust enrichment, and .seeks damages, restitution, and injunctive relief, as set forth more fully below.

## PARTIES

5.     Echoe Camacho is a citizen and resident of Yolo County, California, and holds an PenFed Credit Union checking account.

6.     Defendant PenFed Credit Union is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes. PCU has its headquarters in Alexandria, Virginia and has more than $19 billion in assets.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Classes are comprised of at least 100 members; (2) proposed class members reside in at least ten states, meaning at least one member of the proposed classes resides outside of California; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because PCU is subject to personal jurisdiction here and regularly conducts business in this District, and because a

substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**I.    PCU CHARGES MORE THAN ONE NSF FEE ON THE SAME ITEM**

9.     PCU's Membership Disclosures ("Deposit Agreement") and Fee Schedule (collectively "Account Documents") allow it to charge a *single* $30 NSF Fee or a *single* $30 OD Fee when an item is returned for insufficient funds or paid despite insufficient funds.

10.     PCU breaches its contract by charging more than one $30 NSF Fee on the same item, since the contract explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF or OD Fee.

11.     PCU's abusive practices are not standard within the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country—charge one NSF Fee per item, even if that item is resubmitted for payment multiple times. And while some other banks engage in the same practices as PCU, they clearly disclose those charges in the deposit agreements with their customers.

12.     PCU's Deposit Agreement does not say that PCU repeatedly charges customers multiple NSF fees on a single item. To the contrary, the Deposit Agreement indicates it will only charge a single NSF Fee or OD Fee on an item.

**A.    Plaintiff Camacho's Experience.**

13.     In support of her claims, Plaintiff offers examples of fees that should not have been assessed against her checking account. As alleged below, PCU: (a) reprocessed previously declined items; and (b) charged an additional fee upon reprocessing, for a total assessment of *$60 in fees on each item*.

14.     On December 27, 2019, Plaintiff Camacho attempted a $70.77 payment to Acima.

15.     PCU rejected payment of that item due to insufficient funds in Plaintiff's account and charged her a $30 NSF Fee for doing so. Plaintiff does not dispute this initial fee, as it is allowed by PCU's Deposit Agreement.

16.     Unbeknownst to Plaintiff, and without her request to PCU to reprocess the item, however, on January 10, 2020, PCU processed the same item yet again, with PCU labeling the transaction a RETRY PYMT on her statements. Again, PCU returned the item unpaid and charged Plaintiff *another* $30 NSF Fee for doing so.

17.     In sum, PCU assessed Plaintiff $60 in fees in its effort to process a single $70.77 payment.

18.     Plaintiff understood the payment to be a single item as is laid out in PCU's contract, capable at most of receiving a single NSF Fee (if PCU returned it) or a single OD Fee (if PCU paid it).

**B.      The Imposition of Multiple NSF Fees on a Single Item Violates PCU's Express Promises and Representations.**

19.     PCU's Account Documents state that the Credit Union will assess a single fee of $30 for an item that is returned due to insufficient funds.

20.     According to the Fee Schedule, at most a *single* fee will be assessed when an item is returned or paid into overdraft:

Returned ACH (Originated at another financial institution), Check, or Preauthorized Debit

- Non-sufficient Funds........................................................ 30.00

Fee Schedule, Ex. A (emphasis added).

21.     This promise is further defined in the Deposit Agreement when PCU promises to only assess one fee per "item."

> **A fee will be assessed for non-sufficient funds** or uncollected funds (deposits on hold); refer to the Service Fees available at PenFed.org for the amount of this fee. **This fee applies to withdrawals by means of a check, ACH debit, or an electronic debit. This fee will be assessed should we decline to pay the item or pay the item, creating a negative balance on my account.** PenFed in its sole discretion will decide whether to pay an item thus creating a negative balance on my account. My account may be subject to other fees and charges. Service Fees are available online at PenFed.org or by telephone at 800-247-5626.
>
> . . .
>
> **At PenFed's sole discretion, each check or debit item will either be paid**, thereby bringing my account to a negative status, **or the item will be returned unpaid.** My account will be subject to the normal non-sufficient funds and returned-item charges then in effect.

Deposit Agreement, Ex. B, at 5, 23 (emphasis added).

22.     The same check, automatic bill payment, or other electronic payment on an account is not a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

23.     Even if PCU reprocesses an instruction for payment, it is still the same item. The Credit Union's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

24.     Further, the Deposit Agreement goes on to specifically discuss the type of transaction that Plaintiff undertook: a pre-authorized transfer. With respect to pre-authorized transfers, the Deposit Agreement promises

> **PREAUTHORIZED TRANSFERS. Your account will be charged a fee for each pre-authorized withdrawal which is not paid because of nonsufficient funds** or a fee for each pre-authorized withdrawal not paid because of uncollected funds.

Ex. B. at 13 (emphasis added).

25. As alleged herein, Plaintiff took only a single action to make a single transfer; she therefore created may be charged only a single fee.

26. The disclosures described above never discuss a circumstance where PCU may assess multiple NSF Fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again.

27. In sum, PCU promises that one $30 NSF Fee or one $30 OD Fee will be assessed per item, and this must mean all iterations of the same instruction for payment. As such, PCU breached the contract when it charged more than one fee per item.

28. A reasonable consumer would understand that PCU's Account Documents permit it to assess an NSF Fee only once per item.

29. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Credit Union will either pay (resulting in an overdraft item) or return (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does PCU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do PCU customers ever agree to such fees.

30. Customers reasonably understand, based on the language of the Account Documents, that the Credit Union's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same item.

31.     Banks like PCU that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something PCU never did.

32.     For example, First Hawaiian Bank engages in the same abusive practices as PCU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www. fhb.com/ en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_ RXP1.pdf (last accessed September 25, 2019) (emphasis added).

33.     Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H, https://www.kleinbankonline.com/bridge/disclosures/ib/disclose.html (last accessed September 25, 2019) (emphasis added).

34.     Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF")

funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

*Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Feb. 15, 2019),

https://www.centralpacificbank.com/PDFs/Miscellaneous-Fee-Schedule.aspx.

35.     BP Credit Union likewise states: "We may charge a fee each time an item is

submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result

of a returned item and resubmission(s) of the returned item."

36.     Regions Bank likewise states:

If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf.

37.     First Financial Bank states, "Merchants or payees may present an item multiple

times for payment if the initial or subsequent presentment is rejected due to insufficient funds or

other reason (representment). Each presentment is considered an item and will be charged

accordingly." Special Handling/Electronic Banking Disclosures of Charges, First Financial Bank

2 (Aug. 2018), https://www.bankatfirst.com/content/dam/first-financial-

bank/eBanking_Disclosure _of_ Charges.pdf.

38.     Andrews Federal Credit Union states, "

You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the

item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

https://www.andrewsfcu.org/AndrewsFCU/media/Documents/Terms-and-Conditions_REBRANDED_Dec2019-Update.pdf

39.     Consumers Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.myconsumers.org/docs/default-source/default-document-library/ccu_membership_booklet_complete.pdf?sfvrsn=6

40.     Wright Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.wpcu.coop/en-us/PDFDocuments/Important%20Account%20Information%20Disclosure%20-%20WPCU.pdf

41.     Railroad & Industrial Federal Credit Union states,

Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.rifcu.org/Documents/Disclosures/Account-Terms-Conditions.aspx

42.     Partners 1st Federal Credit Union states.

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.partners1stcu.org/uploads/page/Consumer_Account_Agreement.pdf

43. Members First Credit Union states,

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment [.]

http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf

44. Community Bank, N.A. states,

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure.pdf

45. RBC Bank states,

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf

46. Diamond Lakes Credit Union states,

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or

resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

https://www.diamondlakesfcu.org/termsconditions.html

47.     Parkside Credit Union states,

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

https://www.parksidecu.org/_/kcms-doc/1043/44277/Membership-and-Account-Agreement.pdf?__cf_chl_captcha_tk__=add6ebea42df3385074decd4b16c1f86a8369dc9-1580434763-0-AfXmB7FcyYTqzK9oMNbMSKM6k5fnKS5Xf-z7p3Tv-Pt951tDs7wM8yaaIV06w718t2nomyWR1Q8COwgpfgE07FJWZUeFkJN6lxbXDZG1SvidTWh Ym9l85AbCd5afw2imyGdtdzKhXl9bQ9TYkjOlTVM4w8OFJOtE3wVIHrEITnQnSfoR5mZxM 5O0bu4f_FHoHiJj0XsjNkVoGblk0-lti6-gMn-Wcu_o87SGQW6dOUF2i6rHGiM_CkdI-ULanKI2NS3KlhkYAuNatN9Jdwr7Plc6oJozMbZQeczuO7VlbRnuCFD0tjzkw1lsnof7uaRvLRA kfKYi3wh0tUU1c_Y6N4aH1qN8SPftOn8TYJHO7OoILvpMfamNTqv_djpbUl3GVA

48.     PCU provides no such disclosure, and in so doing, breaches its contracts with accountholders, engages in bad faith conduct, and deceives its accountholders.

**C.     The Imposition of Multiple NSF Fees on a Single Item Breaches PCU's Duty of Good Faith and Fair Dealing.**

49.     Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Credit Union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Credit Union has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from

exercising its discretion to pile on ever greater penalties. Here—in the adhesion agreements PCU foisted on Plaintiff and its other customers—PCU has provided itself numerous discretionary powers affecting customers' bank accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Credit Union abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

50.     PCU exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines "item" in a way that directly leads to more NSF Fees. Further, PCU abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Account Documents. This is a breach of the Credit Union's implied covenant to engage in fair dealing and act in good faith.

51.     By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee on a single item, PCU breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

52.     It was bad faith and totally outside Plaintiff's reasonable expectations for PCU to use its discretion to assess two or three NSF Fees for a single attempted payment.

**D. The Imposition of Multiple Fees on a Single Item Is Deceptive and Violative of California Consumer Protection Law.**

53.     In marketing and promotions, PCU describes itself as a consumer-friendly, low-fee credit union.

54.     Amidst a slew of banks and credit unions all competing for consumers' business, PCU advertises its checking accounts as an attractive alternative to checking accounts at larger, more impersonal banks, which may involve numerous hidden fees.

55.     On its website, PCU promises: "Money in, money out. When it comes to routine banking, you need a checking account that offers the ease of use you need without sucking you dry with added fees. A good checking account is designed to handle all the financial tasks you need on a routine basis." *See* https://www.penfed.org/learn/what-to-expect-from-your-checking-account.

56.     PCU further promises, "Keeping your checking account at a credit union helps you make the most of even this basic financial resource. 'As a credit union CEO, my mission is to pay the most I can on deposits and charge the least on our loans to our member owners,' said PenFed Credit Union President and CEO James Schenck. 'Credit unions exist to maximize value to their members, not a group of profit-seeking investors.'" See https://www.penfed.org/learn/what-to-expect-from-your-checking-account

57.     PCU specifically advertises its Access America checking accounts as an "account that earns you more." *See* https://www.penfed.org/accounts/access-america-checking

58.     Plaintiff chose to bank with PCU based on these representations, and the representations in PCU's Account Documents.

59.     But PCU never discloses that it uses secret, fee-maximizing policies designed to strip its members of their hard-earned funds. PCU fails to inform consumers that, unlike other banks (like Chase), it will assess multiple insufficient funds fees on the same item, each and every time it is re-processed.

60.     Had Plaintiff known about PCU's true fee practices, she would not have chosen to bank with PCU.

## **CLASS ACTION ALLEGATIONS**

61.     Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated pursuant to Federal Rule 23. The Classes include:

> All persons who, within the applicable statute of limitations period, were charged multiple NSF Fees for the same debit item in an PCU checking account (the "Multiple NSF Class").

> All persons in the State of California who, within the applicable statute of limitations period, were charged multiple NSF Fees for the same debit item in an PCU checking account (the "California Multiple NSF Class").

62.     Excluded from the Classes are PCU and its subsidiaries, affiliates, and any entities in which it has a controlling interest, and each of the officers, directors, immediate family members, legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

63.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add subclasses if necessary before this Court determines whether certification is appropriate.

64.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual Class members because PCU has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

a)     Whether PCU improperly charged NSF Fees;

b)     Whether any of the conduct enumerated above violates the contract;

c)  Whether any of the conduct enumerated above violates the covenant of good faith and fair dealing;

d)  Whether any of the conduct enumerated above constitutes unjust enrichment; and

e)  The appropriate measure of damages.

65.  The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to PCU's records. PCU has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

66.  It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

67.  Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by PCU, as described herein.

68.  Plaintiff is more than an adequate representative of the Classes in that Plaintiff has an PCU checking account and has suffered damages as a result of PCU's contract violations, PCU's violations of the covenant of good faith and fair dealing, and PCU's unjust enrichment. In addition:

a)      Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b)      There is no conflict of interest between Plaintiff and the unnamed members of the Classes;

c)      Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d)      Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

69.      Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

70.      PCU has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

71.      All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Classes)

72.      Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

73.      Plaintiff and PCU contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

74.      Defendant mischaracterized in the Account Documents its true NSF Fee practices and breached the express terms of the Account Documents.

75.      No contract provision authorizes Defendant to charge more than one NSF Fee on the same item.

76.     Defendant has breached its contracts with Plaintiff and the Classes through its NSF fee policies and practices as alleged herein.

77.     Plaintiff and members of the putative Classes have performed all of the obligations on them pursuant to the Credit Union's agreements.

78.     Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches.

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Classes)

79.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

80.     Plaintiff and PCU contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

81.     Under California law and the states wherein PCU does business, a covenant of good faith and fair dealing is implied in every contract. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

82.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

83.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

84. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes her conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

85. PCU breached the covenant of good faith and fair dealing through its NSF fee policies and practices as explained herein.

86. Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

87. Plaintiff and members of the putative Classes have performed all of the obligations imposed on them pursuant to the Deposit Agreement.

88. Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

**COUNT III**
**UNJUST ENRICHMENT**
**(In the Alternative to COUNT I and COUNT II)**
**(On Behalf of Plaintiff and the Classes)**

89. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

90. This Count is brought solely in the alternative to Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims. Plaintiff acknowledges that her breach of contract claim cannot be tried along with unjust enrichment.

91. To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

92. Plaintiff and the Classes conferred a benefit on Defendant when they paid Defendant the fees that were not disclosed or allowed for in the in the Account Documents.

93.	Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

94.	Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

95.	Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

### COUNT IV
### California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf of the California Multiple NSF Class)

96.	Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

97.	PCU's practice of charging more than one NSF Fee on the same item violates California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

98.	PCU's conduct as described herein constitutes a fraudulent business practice within the meaning of Bus. & Prof. Code § 17200, *et seq.*, through both their affirmative misrepresentations and material omissions. Such representations and omissions misled the Plaintiff and Class members, and are likely to mislead the public. Specifically:

    a.	PCU misrepresented material facts, pertaining to the sale and/or furnishing of banking services to the California Multiple NSF Class by representing and advertising that it would only assess a single $30 NSF Fee for a single item; and

    b.	PCU omitted, suppressed, and concealed the material fact that it would charge multiple $30 NSF Fees for a single item.

99.	PCU's conduct described herein is "unfair" under Bus. & Prof. Code § 17200 because it is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious

to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiff, the Class, and the public.

100.    PCU knew or should have known that their representations were false, deceptive, and misleading.

101.    There were reasonably available alternatives to further PCU's legitimate business interests.

102.    Reasonable consumers had no way of knowing that PCU were engaged in false, deceptive, and misleading advertising, and therefore could not have reasonably avoided the injuries that they suffered.

103.    PCU's wrongful conduct is ongoing and part of a pattern or generalized course of conduct repeated on thousands of occasions yearly.

104.    Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of the general public enjoining PCU from continuing to engage in the unfair competition described above, or any other act prohibited by law.

105.    Plaintiff also seeks rescission and an order requiring PCU to make full restitution and to disgorge their ill-gotten gains wrongfully obtained from members of the Class as permitted by Bus. & Prof. Code § 17203.

106.    Additionally, Plaintiff and the Class members seek an order requiring PCU to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A.     Certifying the proposed Classes pursuant to Federal Rule of Civil Procedure 23, appointing the Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the Classes;

B.     Declaring that PCU's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

C.     Enjoining PCU from the wrongful conduct as described herein;

D.     Awarding restitution of all fees at issue paid to PCU by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E.     Compelling disgorgement of the ill-gotten gains derived by PCU from its misconduct;

F.     Awarding actual and/or compensatory damages in an amount according to proof;

G.     Awarding pre-judgment interest at the maximum rate permitted by applicable law;

H.     Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

I.     Awarding such other relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.


Dated:  February 21, 2020.

Respectfully submitted,

/s/ Jeffrey Kaliel
Jeffrey Kaliel (SBN 238293)

Sophia Goren Gold (SBN 307971)
Kaliel PLLC
1875 Connecticut Avenue NW, 10th Floor
Washington, DC  20009
202-350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Counsel for Plaintiff and the Proposed Class